UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIA ELISE R., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] <br><br> Defendant. | Case No.: 20-cv-00840-KSC <br><br> **ORDER ON JOINT MOTION FOR JUDICIAL REVIEW** <br><br> **[Doc. No. 21]** |

On May 4, 2020, plaintiff Mia Elise R. ("plaintiff") filed a complaint seeking judicial review of defendant's denial of her application for disability benefits. Doc. No. 1. Before the Court is the parties' Joint Motion for Judicial Review (the "Joint Motion" or "Jt. Mot."). Doc. No. 21. In the Joint Motion, plaintiff requests to have her application for benefits remanded to the Social Security Administration (the "Administration") for further proceedings, and defendant ("defendant" or the "Commissioner") moves to have her determination that plaintiff is not disabled affirmed. *See generally id.* The Court has carefully considered the parties' arguments, the applicable law, and the evidence in the

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi is substituted for Andrew Saul.

record. For the reasons stated below, plaintiff's request for remand is **DENIED** and the judgment of the Commissioner is **AFFIRMED**.

## I. BACKGROUND

### A. Plaintiff's Application for Disability Benefits

On October 31, 2016, plaintiff filed a protective application for supplemental security income, alleging a disability beginning June 1, 2014, which was later amended to October 1, 2015. Certified Administrative Record ("AR") at 10, 29.[2] After her application was denied at the initial stage and upon reconsideration, plaintiff requested and was given a hearing before an administrative law judge ("ALJ"). *Id*. The hearing was held on February 25, 2019. *Id.* at 10. Plaintiff appeared with counsel and gave testimony, and a vocational expert also testified. *Id.* In a decision dated May 17, 2019, the ALJ concluded that plaintiff was not disabled. *Id.* at 11. The Appeals Council denied review of the ALJ's decision on March 2, 2020, and the decision became final on that date. *Id.* at 1.

### B. Summary of the ALJ's Findings

The Administration employs a sequential five-step evaluation to determine whether a claimant is eligible for benefits under the Social Security Act (the "Act").[3] ALJ Barry Robinson, who adjudicated plaintiff's claim, followed this five-step process in rendering

---

[2] The Court adopts the parties' pagination of the AR. All other record citations are to the page numbers generated by the Court's CM/ECF system.

[3] *See* 20 C.F.R. §§ 404.1520. First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. *Id.*, § 404.1520(a)(4)(i). Second, the ALJ must determine whether the claimant suffers from a "severe" impairment within the meaning of the regulations. *Id.*, § 404.1520(a)(4)(ii). Third, if the ALJ finds the claimant suffers from a severe impairment, the ALJ must determine whether that impairment meets or is medically equal to one of the impairments identified in the regulations' Listing of Impairments. *Id.*, § 404.1520(a)(4)(iii). Fourth, if the impairment does not meet or equal a listing, the ALJ must determine the claimant's residual functional capacity ("RFC") based on all impairments (including those that are not severe) and whether that RFC is sufficient for the claimant to perform his or her past relevant work. *Id.*, § 404.1520(a)(4)(iv). At the fifth and final step, the ALJ must determine whether the claimant can make an adjustment to other work based on his or her RFC. *Id.*, § 404.1520(a)(4)(v). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) (citation omitted).

his decision. *See generally* AR at 12-16. At step one, the ALJ found plaintiff did not engage in substantial gainful activity from the alleged date of the onset of plaintiff's disability through the date of the ALJ's decision. *Id.* at 12.

At step two, the ALJ found that plaintiff had the following severe impairments: diabetes mellitus, obesity, and peripheral neuropathy. *Id.* The ALJ further found that these medically determinable impairments "significantly limit [plaintiff's] ability to perform basic work activities." *Id.* However, as to plaintiff's other alleged impairments, the ALJ found them to be either non-severe or not medically determinable.[4] *Id.* at 13.

At step three, the ALJ found that plaintiff's impairments, whether alone or in combination, did not meet or medically equal one of the impairments listed in the Commissioner's Listing of Impairments. *Id.*

Proceeding to step four, the ALJ found that plaintiff's RFC was as follows:

> [Plaintiff] has the residual functional capacity to perform light work . . . except the claimant can occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; she can stand and/or walk for a total of 2 hours, and can sit for a total of 6 hours in an eight-hour workday. Pushing and/or pulling with the lower extremities, including the use of foot controls bilaterally, is limited to occasional. She can occasionally climb ramps and stairs, but she can never climb ladders, ropes or scaffolds. [Plaintiff] can occasionally balance, stoop, kneel, crouch and crawl. She should avoid concentrated exposure to extreme cold, extreme heat, vibration; and she should avoid even moderate exposure to hazardous machinery and unprotected heights. She can have no exposure to uneven terrain.

*Id.*

In making this determination, the ALJ considered the three medical opinions in the record. *Id.* at 15. He assigned "partial weight" to the opinion of medical consultant R. Bitonte, M.D. *Id.*; *see also* AR at 73-79. The ALJ considered Dr. Bitonte's assessment that

---

[4] Plaintiff alleged that the following conditions limited her ability to work: "Severe peripheral neuropathy, chronic pain, difficulty walking, diabetes, pending loss of left foot, nerves controlling muscles in the left foot are dead." *See* AR at 200.

plaintiff could perform light work and could stand or walk for two hours, and sit for six hours, in an eight-hour workday to be "consistent" with the findings in the record. *Id.* at 15. However, Dr. Bitonte had not recommended any limitations as far as plaintiff's ability to use foot controls, which the ALJ found inconsistent with findings of diminished sensation and the absence of a sural response.[5] *Id.* The ALJ also found Dr. Bitonte's recommended postural limitations and limitations to exposure to pulmonary irritants were not supported by the record. *Id.*

The ALJ gave "great weight" to the opinion of medical consultant M. Mazuryk, M.D., who opined that in an eight-hour workday, plaintiff could stand or walk for up to two hours and could sit for up to six hours. *See id.* at 80-89. Dr. Mazuryk further stated that plaintiff's use of foot controls would be limited due to her neuropathy, and that she should not climb ladders, scaffolds or ropes or be exposed to uneven terrain, extreme cold or vibration, or hazardous machinery. *See id.* The ALJ found that Dr. Mazuryk's opinion and recommended limitations were "consistent with the medical record, including findings of limping gait, slightly decreased sensation in the bilateral feet, and the claimant's reports of increased exercise activity." *Id.* at 15.

The ALJ next considered the opinion of plaintiff's treating physician, Dr. Athyal. *Id.* Like Drs. Bitonte and Mazuryk, Dr. Athyal opined that plaintiff could sit for up to six hours, and walk for up to two hours, in an eight-hour day. *See id.* at 1594-1597. Dr. Athyal further stated that because of her impairments, plaintiff would be "off task" 20 percent of the time and would likely be absent from work more than four days per month. *See id.* Dr. Athyal also stated that plaintiff's neuropathic pain affected her "mental capabilities" such that she "may need days off." *Id.* However, he stated she "[o]therwise" had "no limitation at work." *Id.* The ALJ found that there were "stark inconsistencies" between the "degree

---

[5] The sural nerve senses touch, pain, foot position, temperature, and vibration in the ankle, outer foot and heel, and back of the leg. *See* https://my.clevelandclinic.org/health/body/22323-sural-nerve#care (last visited March 18, 2022).

of restriction" in Dr. Athyal's assessment and the objective medical evidence. *Id.* at 15. Accordingly, he gave Dr. Athyal's opinion "little weight." *Id.*

The ALJ also considered plaintiff's subjective symptoms and limitations but found that while her medically determinable impairments could reasonably be expected to cause her alleged symptoms, her subjective assessment of their limiting effects was "not entirely consistent with the medical evidence and other evidence in the record . . ." such that plaintiff's "allegations overstate[d] the extent of her symptoms" and did not support "extreme limitations." *Id.* at 14-15. To the extent plaintiff's subjective testimony was consistent with the objective medical record, those limitations were incorporated into the RFC. *Id.* at 13.

Using the above RFC, the ALJ determined that plaintiff could return to her past relevant work as a customer service representative. *Id.* at 16. In so finding, the ALJ referenced the testimony of the vocational expert that "the exertional and nonexertional demands of this past relevant work do not exceed [plaintiff's] residual functional capacity as found herein." *Id.*

Given his findings at step four, the ALJ did not proceed to step five. *See* 20 C.F.R. § 416.920(f) and (g) (explaining that the claimant's impairments "must prevent" a return to past relevant work; only if this condition is met is it necessary to determine if the claimant can "make an adjustment to any other work"). Based upon the foregoing analysis and findings, the ALJ concluded that plaintiff had not been under a disability since October 31, 2016, the date her application was filed. *Id.* at 11. Accordingly, her application for benefits was denied. *Id.* at 11, 16.

## II. DISPUTED ISSUES

Plaintiff claims the ALJ erred in two ways: First, plaintiff argues that the ALJ "improperly rejected" a disability opinion by plaintiff's treating physician, Dr. Athyal. Jt. Mot. at 4. Plaintiff asserts that the ALJ failed to provide "specific and legitimate" reasons for rejecting Dr. Athyal's opinions, as required by the regulations. *Id.* Plaintiff further asserts that the opinion of a treating provider such as Dr. Athyal is generally entitled to

"great weight" as it is "well supported and consistent with the longitudinal evidence of record." *Id.* at 5. Second, plaintiff argues that, having rejected Dr. Athyal's opinion, the ALJ was obligated to "develop the medical record" by requesting another opinion from a treating or examining provider. *Id.* at 13. Plaintiff asserts that the ALJ did not do so, and instead relied on "outdated" opinions of non-examining experts and "interpreting the remaining records" himself. *Id.* at 12. Plaintiff requests that the Court reverse the ALJ's decision and remand for further proceedings. *Id.* at 15.

Defendant requests that the Court affirm the Commissioner's decision to deny benefits. *Id.* Regarding plaintiff's argument that the ALJ improperly discounted Dr. Athyal's opinion, defendant states that the ALJ properly evaluated each of the three medical opinions before him in the context of the objective medical evidence. *Id.* at 8. Defendant states that the ALJ "set forth specific and legitimate reasons supported by substantial evidence" for his determination that Dr. Athyal's opinion was not persuasive, by "explain[ing]" that the opinion "was both unsupported by and inconsistent with" the record as a whole. *Id.* at 8, 11. Defendant also asserts that plaintiff's argument that the ALJ was required to augment the record with another medical opinion is "unfounded," and states that the ALJ "properly relied on" the opinion of a state agency consulting physician, as it "was supported by substantial evidence in the record." *Id.* at 14. Therefore, defendant asserts, the ALJ's RFC determination – and the resulting determination that plaintiff was not disabled – were "proper" and "supported by substantial evidence." *Id.* at 7, 14-15.

### III. STANDARD OF REVIEW

The Commissioner's final decision "must be affirmed" if it is "supported by substantial evidence, and if the Commissioner applied the correct legal standards." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ford*, 950 F.3d at 1154 (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). This Court must review the entire record and consider adverse as well as supporting evidence. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). Where the

evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Id*. However, the Court cannot uphold the Commissioner's decision for reasons "'the agency did not invoke in making its decision.'" *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). The Court may affirm an erroneous decision if it "is clear from the record that [the] error was inconsequential to the ultimate nondisability determination." *Robbins v. Comm'r, Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).

## IV. DISCUSSION

### A. The ALJ Properly Considered Dr. Athyal's Opinion

An ALJ must consider all evidence, including medical opinions, in determining whether the claimant is disabled. *See* 20 C.F.R. § 416.920(a)(3). In this case, under the then-existing regulatory framework, the ALJ's treatment of the medical opinions in the record depended upon whether the opinions were proffered by treating, examining, or non-examining physicians.[6] That framework provided that the opinions of treating physicians, who were presumed to have "the most significant clinical relationship with the claimant[,] [were] generally entitled to more weight than those with lesser relationships." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). To discredit a treating provider's opinion, the ALJ was required to give "specific and legitimate reasons for doing so that are supported by substantial evidence." *Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020) (citation omitted). "'The ALJ [could] meet [this] burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Magellanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). Although afforded relatively greater weight than the opinion of an examining or non-examining physician, however, a treating provider's

---

[6] The regulations no longer require special consideration of a treating physician's opinion. However, because plaintiff's claim for benefits was filed before March 27, 2017, the previous regulatory framework applies. *See* 20 C.F.R. §§ 404.1520c and 404.1527.

opinion was "'not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.'" *Batson*, 359 F.3d at 1195 (citation omitted).

Here, the ALJ found that Dr. Athyal's opinion that plaintiff "would be off task twenty percent of the time and would be absent more than four days per month," as well as additional limitations on her ability to stoop and climb stairs, were "inconsistent" with clinical findings in the record. AR at 15. Plaintiff complains that the ALJ "fail[ed] to set forth [with] specificity" his reasons for rejecting Dr. Athyal's opinion. Jt. Mot. at 6. The Court disagrees. The ALJ cited several objective facts that were inconsistent with Dr. Athyal's opinion, including "improved blood sugar levels [and] full strength and range of motion of the bilateral lower extremities," as well as plaintiff's own testimony that her exercise regimen had increased and that she exercised almost every day. AR at 15.

Moreover, the ALJ's discussion of Dr. Athyal's opinion immediately follows his evaluation of plaintiff's subjective testimony regarding her symptoms and limitations (that Dr. Athyal largely repeated in his disability questionnaire), in which the ALJ carefully described the medical evidence that did not support plaintiff's alleged limitations. *See id.* at 14-15. This evidence included, *inter alia*, reports that plaintiff's diabetes was well controlled and that her A1c level was "within goal," objective examination reports that reflect full strength and range of motion and only slightly diminished sensation in her lower extremities, and an examination that found plaintiff walked with a normal gait. *Id.* The ALJ also noted that by plaintiff's own testimony, she exercised regularly, and was able to go out to dinner and movies, read, do computer programming, and take care of light housework even when experiencing a "flare-up." *Id.* at 15.

Contrary to plaintiff's assertion that the ALJ "fail[ed] to offer a substantive basis" for rejecting Dr. Athyal's disability opinion (Jt. Mot. at 6), the ALJ identified several factors from the objective medical evidence that conflicted with Dr. Athyal's opinion. *See* 20 C.F.R. § 404.1527(b) (explaining that "[i]n determining whether [a claimant is] disabled, [the Administration] will always consider the medical opinions in [the] case record together with the rest of the relevant evidence [it] receive[s]"). The Court finds the

ALJ adequately met his burden to articulate "specific and legitimate reasons" for giving little weight to Dr. Athyal's opinion. *Coleman*, 979 F.3d at 757 (finding the ALJ "did not err in concluding that the opinions assessing severe limitations were unsupported by the record, thus furnishing a specific and legitimate reason to discount [them]") (citation omitted).

      The Court is likewise not persuaded that Dr. Athyal's opinion was "entitled to great weight" because it was "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . ..'" Jt. Mot. at 5 (citing *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007)). Dr. Athyal's opinion was provided on a check-the-box and fill-in-the-blank form and was not accompanied by any objective findings or results of examination. *See* AR at 1594-97. Indeed, it appears to have been completed over the telephone. *See id.* at 1585 (progress note dated November 30, 2018 in which Dr. Athyal indicates that plaintiff's "chief complaint for telephone appointment" was that she "ha[d] a form from her lawyer for me to fill out"). Significantly, Dr. Athyal's assessment that plaintiff's impairments would affect her ability to concentrate such that she would be "off task" 20 percent of the time, and that she "may" need four or more days off per month "due to her neuropathic pain affecting her mental capabilities" are not supported by any testing, examination, or other objective data. *See id.* at 1594-97. There are also no treatment or progress notes from Dr. Athyal close in time to his completion of the disability questionnaire that indicate the basis of his opinion.[7] Even under the then-existing opinion hierarchy, the ALJ was not required to "take [Dr. Athyal's] opinions at face value" and could "permissibly reject [his] check-off report[] that [did] not contain any explanation of the bases of [his] conclusions." *Ford*, 950 F.3d at 1155.

---

[7] As the ALJ noted at the hearing, when plaintiff contacted Dr. Athyal in October 2018 regarding her disability paperwork, Dr. Athyal asked her to come in for a visit because it had been "a few years" since he had seen her. *See* AR at 59, 1441.

For the above reasons, the Court finds the ALJ did not err by assigning little weight to Dr. Athyal's opinion.

### B. The ALJ Properly Considered the Record, Including Other Opinion Evidence

"The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citation and internal quotation marks omitted). That does not mean, however, that the ALJ is required to "exhaustively consider each issue that is presented to him." *Baker v. Astrue*, No. 10cv1276–LAB (NLS), 2012 WL 218365, at *3 (S.D. Cal. Jan. 23, 2012) (rejecting similar argument). "To the contrary, it is only when the evidence is ambiguous or the ALJ finds that the record is inadequate" that the ALJ's duty to conduct a further inquiry is triggered. *Id.*

Plaintiff argues that the ALJ's duty to further develop the record was "triggered" in this case because, having given minimal weight to Dr. Athyal's opinion, it was incumbent upon the ALJ to obtain further medical opinion evidence from a treating provider. Jt. Mot. at 13 (plaintiff's argument that the ALJ's RFC determination "is legally deficient because the ALJ rejected the opinion of Dr. Athyal . . . and failed to request another opinion"). Plaintiff also asserts that the ALJ was "obligated" to further develop the record because the other medical opinions available to the ALJ were "outdated." *Id.* at 11-12.

Plaintiff's assertion that Dr. Mazuryk's assessment was "outdated" lacks merit. *See* Jt. Mot. at 12. Plaintiff's alleged disability began on October 1, 2015. AR at 29. Dr. Mazuryk reviewed plaintiff's medical records and provided an opinion as to her residual functional capacity on March 15, 2017. *Id.* at 84-89. As defendants correctly point out, plaintiff has not alleged that "her condition deteriorated significantly" between then and November 30, 2018 (the date of Dr. Athyal's completed the RFC questionnaire). Jt. Mot. at 14. Given these facts, the Court cannot agree that Dr. Mazuryk's opinion was "outdated" or that it was necessary for the ALJ to obtain a more recent medical opinion before adjudicating plaintiff's claim.

///

The Court similarly rejects plaintiff's assertion that Dr. Mazuryk did "not consider the complete evidence of record." Jt. Mot. at 12. Plaintiff relies on *Molina v. Berryhill*, No. 2:17-cv-01991 CKD, 2018 WL 6421287 (E.D. Cal. Dec. 6, 2018), but that case is distinguishable from the facts presented here. In *Molina*, the court found that the ALJ erred in relying on a medical opinion that "predated some significant medical events," including a workplace assault in which the claimant was re-injured and further treatment and diagnoses related to that injury. *See id.* at **2-4. Because the medical opinion in *Molina* did not account for these subsequent events, which could have materially affected the disability decision, the court found that the ALJ's "duty to further develop the record was triggered." *Id.* at *4. Here, however, plaintiff has not alleged any subsequent or compounding events that would render the ALJ's reliance on Dr. Mazuryk's opinion, dated March 15, 2017, inappropriate. *See* Jt. Mot. at 12.

Finally, as discussed above, both under the then-existing regulations and well-established Ninth Circuit precedent, the ALJ was permitted to discount Dr. Athyal's opinion. *See Ford*, 950 F.3d at 1154 ("[T]he ALJ need not accept the opinion of a treating physician."). Plaintiff has not persuaded the Court that by doing so, the ALJ was then obligated to seek supplementation of the record or that his opinion was rendered legally deficient.

In sum, the Court finds that the medical record available to the ALJ at the time he rendered his decision was neither incomplete nor ambiguous.[8] Accordingly, the ALJ did not err by failing to request a supplemental medical opinion.

///
///
///

---

[8] The Court notes that the ALJ left the record open at the conclusion of the February 25, 2019 hearing to allow plaintiff an opportunity to obtain and provide her most recent treatment records. AR at 27-28, 69. Records dated October 25, 2018 to January 18, 2019 were later provided by her representative and were before the ALJ when he rendered his decision. *See* AR at 1495-1693.

### C. Substantial Evidence Supports the ALJ's Decision

The Court has independently reviewed the record, and based on that review, finds that the ALJ's conclusions are supported by substantial evidence.

The objective medical evidence confirms plaintiff's diagnoses of diabetes mellitus, diabetic polyneuropathy and obesity. *See, e.g.,* AR at 337-43, 356-59, 556. Reports of physical examinations reflect that she had poor balance, hypersensitivity in her feet, occasionally (but not always) walked with a limp, and used "extreme caution" walking without her cane. *See id.* at 337-43, 354-55, 453-54, 548-49, 1235-39. Her muscle strength and range of motion in her feet and ankles were normal. *See id.* at 1259-62, 1573-78. Plaintiff reported that she exercised regularly, both before the alleged date of her disability onset and afterwards. *See id.* at 371, 414, 536-39, 1235-39, 1523-40; *see also id.* at 48 (plaintiff's testimony at the hearing that "I'll go to the YMCA to do my water aerobics three times a week, but . . . I'm not going to go on a marathon or anything."). Dr. Athyal reported on November 9, 2018 that plaintiff's diabetes was responding to treatment and that her A1c was "within goal." *Id.* at 1549.

Plaintiff's testimony about her activities also supports the ALJ's nondisability determination. At the hearing, plaintiff testified that despite her impairments, she was capable of fixing simple meals and performing light housework. *Id.* at 48, 50, 54. She also testified she exercised regularly, socialized with friends, read, and did computer programming. *Id.* at 48-50, 54. Her self-described "pain journal" confirms that plaintiff continued to exercise, run errands, go out with friends and family, read, and do gaming or programming on her computer, notwithstanding her alleged limitations. *See generally id.* at 260-288; *accord Ahearn*, 988 F.3d at 1117 (finding nondisability determination was adequately supported by evidence of the claimant's "daily activities," including playing video games, using the library, shopping, preparing meals, socializing with friends, and performing household chores).

The Court finds the foregoing is relevant and substantial evidence that is adequate to support the ALJ's conclusions that the medical record was inconsistent with plaintiff's

alleged limitations and Dr. Athyal's opinion, and the ALJ's subsequent determination that plaintiff is not disabled.

## V. CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ's decision was free of legal error and was supported by substantial evidence. Plaintiff's request to remand for further proceedings is therefore **DENIED**. The final decision of the Commissioner of Social Security is **AFFIRMED**. The Clerk of the Court shall enter judgment accordingly and terminate the case.

**IT IS SO ORDERED.**

Dated: March 18, 2022

Hon. Karen S. Crawford
United States Magistrate Judge